Fantastic Industries, Inc. v. Jacob Kryman Good morning. May it please the Court, Jonathan Adler, Stein Adler, Davon Zelkowicz, on behalf of the appellants K.C.H. and Jacob Kryman. Your Honors, I want to address the fundamental inconsistencies in the District Court's decision compelling arbitration here that we maintain warrant reversal or, at a minimum, remand to the District Court for further factual determination. The first inconsistency I want to address is how you reconcile the District Court's decision compelling arbitration on the basis of this November 2017 agreement, which is that the parties modified their agreement and subsequently went and appeared before another religious tribunal other than that which is indicated in that agreement. Well, they tried to go before another tribunal, but that turned out to be an aborted project. They never actually agreed to go forward before another tribunal because there was a dispute about what the terms would be before that other tribunal, right? And your adversary's client said, well, if it's not going to be the same terms that I think are binding from the other agreement, I'm not going to do this. And so that never was an agreement on a different arbitration plan. Well, Judge Lynch, you're correct. The parties did go and appear before a Zablah panel, as it's called, and they subsequently did not go forward with the arbitration. But wasn't the only thing that was not decided about the original panel was a choice of law? Everything else was decided and was signed up. The only thing that was not decided was a choice of law, because at the first hearing it will be determined whether the parties are obligated to bring the dispute for litigation in accordance with the law of the Torah, was one thing that was said, and the other thing that was said in decision, whether based upon the law of the Torah or a compromise close to the law of the Torah, shall be made by the majority of the arbitrators. So everything else was signed. Then what happened and why it didn't go forward is another matter. But everything else was signed and decided. The only thing that was not decided in the agreement was choice of law. And the Supreme Court has said that choice of law is something that the arbitrators can decide once there is an agreement to arbitrate. So whatever the district court may have said about one thing or another, isn't this a very simple case? There was an agreement to arbitrate. There was one fact that was left undecided. And that's a fact the Supreme Court said is up to the arbitrators. Well, Judge Calabresi, let me address your question and Judge Lynch's question together, because I think they go to the fundamental error here, which is the district court found that the agreement was unambiguous on its face and enforced it on that basis. It did not consider any of the evidence in the record, including the rival affidavits from the two principals, from their religious advisors, which made clear that there was really not agreement on all of these terms. In fact, this is where the context matters. This is not a standard commercial arbitration agreement that was in place where the parties say if any dispute comes up, we are going to decide that with arbitration before this panel. Instead, what's established in the record here is that this was a process that was commenced by what's called hazmana. And as part of that, all that was agreed to, all that Mr. Kreiman maintains he agreed to, as appears in his affidavit, is that he would appear before Mahon. And that he would appear before Mahon as a preliminary procedural issue. That's not what he signed. What he signed was something that said we're going to put all of these issues before the arbitrator. And then there's a handwritten addition that essentially says, yeah, not only all the issues, but also the question of arbitrability is also going to go before the arbitrators. And that's what was signed. Where in the agreement is there any ambiguity about whether the signatories to this agreement have agreed to put all of their issues, including the question of whether this is appropriate for arbitration, before Mahon? Judge Lynch, the ambiguity is that Mr. Kreiman maintains that his understanding of the handwritten proviso, which is what you referred to, stating that when the parties first appear before Mahon, it will be determined whether they are obligated to bring their dispute for litigation in accordance with the laws of the Torah, that that was really meant to be a limitation or a superseding clause to the all claims and controversy language. He made it clear that it was not his intent to appear there to resolve any potential claims. It was to go there to discuss what- Well, what if at the first hearing, the arbitrator said, yep, we think that the parties are indeed obligated to bring their dispute in accordance with the law of the Torah? Then he can walk out? Your Honor, that's where the context matters. What happens at these arbitrations, and the best evidence for this is that the parties twice- Why do we look at context when we've got language? We don't usually look at context in an arbitration. I mean, everybody can give us a different context, and this happens to be a religious context, but there are other contexts. The language says what it says. We look at context here because, one, there's ambiguity on the face of the document that you have a handwritten proviso- Why is there any ambiguity? And it is a real question. I want to hear the answer. Because what I see is they say they've agreed to settle all their controversies before the particular rabbinical judges who are named. And what's added says, and the first thing they're going to decide is whether this case is really appropriate for arbitration according to the law of the Torah. Why is that an ambiguity or an inconsistency? If anything, it reemphasizes that what would be true under secular law, there might be a question as to whether the arbitrability issue is for the arbitrators or not. They're throwing that to the arbitrators, too. And maybe Mr. Kreiman thought that they would decide that, no, they're not obligated. And after that, he would be able to walk away because they would decide that issue his way. But if they decide the issue the other way, he's bound himself to have the arbitrators decide this. And if they decide against him, then we go on to do what the agreement says, which put all the issues before them. Your Honor, it's ambiguous because the intent of that handwritten proviso, as Mr. Kreiman states in his declaration in paragraphs 23 through 25, was to limit or supersede the claims and controversies. But why would we look to his, after the fact, explanation of what it meant if what he says it meant is manifestly not what it actually says? You would look at that because it's not just an unmodified agreement. It's an agreement that's modified with a handwritten proviso. But the handwritten, what everyone agrees is that the handwritten is binding. No one's contesting that that modifies, to some degree, the written text or amplifies it or supplements it. So it's there. And how it modifies it, there's ambiguity as to what it means, and that ambiguity is not explored. I don't see what the – can you – that's what I want to know. Yeah. Tell me what the ambiguity is, because it says at the first hearing there's a preliminary issue that's going to be decided. Now granted, if that is decided one way, the arbitrators could throw the case out and then nothing else would happen. But that doesn't say – if I don't like what the arbitrators say about this, I've never really agreed to put everything before them. I've only agreed – I've only agreed to put the preliminary issue to them. And – well, Judge Lynch, this is where also the context matters in that – and you saw this with Mahon. The parties did appear twice, and they were asked to sign an arbitration agreement. Yeah. But tell me – And they could not agree on those terms. Tell me the ambiguity in the language. In the handwritten language. Yeah. Tell me the ambiguity in that. Again, as I stated, the ambiguity comes in what Mr. Kreiman's understanding was. No, that won't do, because if there is clear language, the fact that somebody thinks I'm saying something other than what I've signed gets you nowhere on all thousands of cases. So I want you to tell me what the ambiguity in that language is, because if there is ambiguity in that language, then I can start to ask about what the guy meant. But I have to start with ambiguity in the language. So tell me what that is. I mean, again, Judge Calabresi, as it maintains, there is ambiguity in what the meaning of that language is, the handwritten proviso, as it conflicts with the other language in the agreement. Well, here's the language. At the first hearing, it will be determined whether the parties are obligated to bring their dispute for litigation in accordance with the law of the Torah. What is ambiguous about that? Well, Judge, I also want to... But just answer that question. You can also do other things, of course. But what is ambiguous about that? Again, the ambiguity is in how it works with the other language in the agreement. What's going to happen at the second meeting? Well, that's one of the questions. I mean, one of your issues, Your Honor, I know I'm out of time. I just want to address one of the inconsistencies here is that even if you assume and take the that this is just a delegation clause, it doesn't comport with the order which sends the parties back to, you know, to arbitrate all the parties' controversies. The order doesn't reflect that they're going back on this limited issue. No, it's not on a limited issue. That's the first issue. Then there's going to be the other issues, depending on how the arbitrators decide the first issue. That happens all the time. Maybe one issue is going to turn out to be controlling, and everything else doesn't need to be addressed. Once you've dealt with that. But, you see, I mean, my problem here is that you say, well, but the rabbinical court decided not to go forward. But if Judge Corman is right that what they said was we're worried that unless we get a better signed agreement than this in some way that the secular courts won't honor it. But if the secular courts will honor it, there's nothing that says that they made a decision that under the law of the Torah they can't or shouldn't do this. But, again, you have the parties twice appeared before Mahan. They asked the parties to sign an arbitration agreement because that's what vests them with authority. They found that the existing agreement wasn't valid. And now they're being said that. No, they didn't find that at all. They didn't say this is not good enough to have an arbitration. They said we're worried about what the secular courts would do. Now, if we tell the rabbinical court that, no, this is a good enough agreement, this does obligate the parties as far as secular law is concerned to arbitrate, I take it it's still open to the rabbinical court to say, well, we won't do it because there's something in the law of the Torah that says we shouldn't. That's OK. That's fine. Then they will have done what this agreement asks them to do, which is decide that issue first. But what they've decided so far is a concern about secular law. And if we can answer that inquiry, and the right answer is that as far as the law of the United States or the law of New York is concerned, this is plenty to make what the arbitrators decide binding, then go do your thing. And if your thing says, no, as rabbis, we shouldn't touch this because here's something in the Torah that says they're not obligated to come to us, and therefore we don't really have power here as a matter of Jewish law, well, good. OK. Then the parties have to do something else to resolve their problems. I mean, Judge Lynch, I think what Mahon panel determined and their reason for not going forward, and again, if you look at 255 in the appendix, the translation of their letter, which is that no arbitration agreement was signed, what happened there is one of the issues that was not explored here. And I think it's not clear that they found that there was a ballot agreement. I think that's one of the issues that is disputed that was not explored here, and that needs further determination or exploration. Thank you. All right. Thank you. Mr. Adler, you've reserved two minutes for rebuttal. We'll now hear from Mr. Troy. Mr. Troy. Mr. Adler. Okay. Mr. Troy, you may proceed. Yes. Okay. Good morning, Your Honors. Thank you very much. As Judge Calabresi pointed out, this is a very simple case. And as Judge Lynch pointed out in questions to the appellant, the arbitrators were concerned about moving forward because they only had this lousy JPEG and not an original signed agreement. They were concerned if they were to reach any result in the arbitration, it would not be recognized by the courts of law, the secular courts. Judge Corman properly held that it was a binding arbitration agreement so that the parties could then go back to the arbitrators with that signed document and go forward. The appellants also persist that the handwritten proviso limits the scope of arbitration to a determination of arbitrability, and I believe that Judge Lynch actually hit the nail on the head. Proviso is, yes, the gateway question that Judge Corman determined and that the panel would then determine what is the scope of the arbitration. I don't think there's any inconsistency or any ambiguity to any of these determinations. You know, I think that Judge Corman goes out of his way to actually, in his decision, to enforce the agreement with the handwritten provision, not as the appellant seemed to say that, well, he ignored it, and I disagree with that analysis. I also want to address the point about the, quote, oral modification of the agreement to go to a second panel and the zebla in that whole situation. I think that, you know, you have to look at the perspective of Fantastic having gone to the first panel on two occasions getting nothing accomplished because Mr. Criman refused to make the exact same agreement that they had the lousy JPEG of, that they then go to this other, he says, look, I want to get some justice here, and he's being, you know, trying every single way to accomplish that. So that is why he said, look, if you're going to go or want to do it this other way where we each appoint an arbitrator and the arbitrators then appoint a third arbitrator and that's the way you're going to go forward, fine. I agree to that. But then Mr. Criman shows up to this, at this, with this lengthy, completely different arbitration agreement, not signing the existing arbitration agreement that was ruled on by Judge Corman. Well, but you could have a situation in which they said, whatever we signed before is not valid, we now try to do another form of arbitration and we'll see whether we can agree to it. What you're saying is that that isn't what happened here. They left the original agreement in force while trying to see whether they might want to make another. But you could perfectly well have a situation in which you abolished the original agreement and then tried to make another one which didn't work. Those are possible situations, aren't they? Judge Calabresi, absolutely. I mean, basically, that's the wonderful thing about contract law is that if you have a meeting of the minds, you can change any contract. But there was no meeting of the minds to change. And there we go back and I think that Judge Corman properly held, okay, this is an agreement to go and arbitrate your case before the mahan loa hoa, then that's what you need to do. And that's what his entire decision went through. And he looked at what the defendants argue or appellants argue are inconsistency or ambiguities and he reconciled those because he didn't see them that way. I have nothing further to say other than I would hope, I would like to rest on our brief. Can I just ask you to cite me to the place in the record that contains the statement by the rabbinical court, the mahan, that its concern was with the secular courts. Where do we find that? I know that's what Judge Corman said. I don't honestly think that we have it directly from them. I think we have it from the representatives that in their affidavits, which was, I think, in the appendix 62, do you want me to pull mine out? But I think it was in Rabbi Stern's declaration that explained that. Because that's what the, you know, was explained to me when this case was first brought to me. That was explained to me. They did, the arbitrators did not want to go forward because they had. Well, I don't think we want to rely on what was explained to you. We want to know what's sort of in the record. Yes, no, I understand. But, okay, you're saying the affidavits of the representatives is where we look. Yes, Rabbi Stern's affidavit. Rabbi Stern's affidavit. Thank you. And I think that Judge Corman's well-reasoned decision should be affirmed. And if the court has any more questions for me, I'd be more than happy to answer them. Okay, I think that's fine. You can reserve, you can rest on your brief. Thank you, Mr. Adler. I'm afraid you've got two minutes of rebuttal. Thank you. I want to pick up on Judge Lynch's question just now to counsel. Because the fact is, there is nothing in the record that conclusively states why Mahoma Hara decided that they could not arbitrate. The only evidence is the letter that appears on page 255 in the appendix, which says that no valid arbitration agreement, that no arbitration agreement was signed before the court. It states that the parties appeared, and that no arbitration agreement was signed. Well, but Rabbi Stern's affidavit on page A63 says, the arbitrators asked Mr. Kryman to produce the original, or that the parties sign again before the arbitrators. The arbitrators stated their concern, concern that if they reached a decision in the matter and Mr. Kryman went to court, the court would not accept the electronic image. Right. So that's what he says. Is there something that contradicts that? I think if you read Mr. Kryman and Mr. Epstein's declarations, you'll see different accounts of what happened. Well, tell me where I find that, and how in it contradicts what Rabbi Stern says. And Judge Lynch, now we're into competing affidavits on these issues. Well, we either are or we aren't. I'm asking you to show me the affidavit, and then we'll see whether we've got competing statements. So you have Mr. Epstein's, Mr. Kryman's declaration, which begins on page 199, and Mr. Epstein's on 238. And I think it's... Okay. If you haven't got it at your fingertips, you've now told us what we should read, and we can read them. But if you have the place that contradicts... I think if you look at Mr. Epstein's declaration beginning pages 22 to... I'm sorry, paragraphs 22 to 25. Remind me who Mr. Epstein was. Judge Calabresi, both parties had rabbis that attended the Mechon appearances on their behalf as advocates. Yeah. But what I want to know is, do we have anything contrary to what one of the rabbis who was on the arbitration panel said, the reason for what the arbitration panel did? I think it was not an affidavit by one of the rabbis on the panel. It was the rabbi who was effectively the lawyer for Mr. Jalas. That doesn't... I mean... Excuse me about... Sorry. What we want to know is what the panel thought it was doing. And we have Rabbi Stern's affidavit as to that. Do we have any affidavit from any member of that panel that contradicts that? Because if what one of the lawyers on one of the sides said, I think that's what they were doing. That's a different order. Judge Calabresi, we do not. The only statement or representation in the record from the actual panel is on 255 in the appendix, which is the letter that they issued. There is no declaration from any members of the three members who were on that panel on Mechon. And I would maintain that this is one of the many factual disputes that were not addressed at all. Including, you know, you heard from counsel also about the oral modification. The truth... The fact is that the only agreement that's before the court is one that designates Mechon. It doesn't designate another panel. There's nothing in that agreement that says the parties weren't free to orally modify it. And they, in fact, did orally modify it. There may be a dispute as to what was intended, but that's a dispute that was, again, completely glossed over by the district court. And they subsequently appeared before another panel. And once they're before that other panel, that Mechon agreement, as our clients maintain, that was modified. But you seem to be suggesting that because they decided an oral modification with respect to a particular panel, that that constituted an abandonment of the entire arbitration agreement. And I guess I'm not sure I follow. I believe that that's... Why? What follows from the other? That's an issue that's disputed. That we would maintain it does. It seems to me like you're making a technical argument, which is oral modification equals the extinguishment of an arbitration agreement. I think in this case, this is where the context is important, because this isn't a standard commercial arbitration agreement. The November agreement only says that the parties are going to go before Mechon. So once you go before another panel, you modify it to go before another panel, yes, I believe that is an abandonment of that agreement. And I think at best, there's a dispute as to that, which was not addressed at all in the district court. And that should be, you know, it should be at a minimum remanded for expiration of that issue. You have Fentastic that pleads that there was an oral modification, doesn't appear anywhere in the opinion. Not addressed at all. All right. Well, unless there are other questions, I think we will reserve decision. Thank you both. Thank you, Your Honor.